**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**TYLER P. FRANCIS**, OSB No. 162519
tyler@angelilaw.com
ANGELI LAW GROUP LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**ROBERT M. CARY**, DC Bar No. 431815
   (*pro hac vice*)
rcary@wc.com
**MEGHAN A. FERGUSON**, DC Bar No. 1002203
   (*pro hac vice*)
mferguson@wc.com
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>W. JOSEPH ASTARITA,<br><br>　　　　Defendant. | Case No. 3:17-cr-226-JO<br><br>**MOTION TO DISMISS** |

　　　　It is undisputed that Oregon State Police officers—*not* Special Agent Joseph Astarita—fired three shots into a man's truck at a roadblock and three other shots that killed that man. What *is* disputed are the government's contentions that Special Agent Astarita discharged his

firearm at all during this incident and that he lied about doing so.  Of course, to prevail in this case, the government will have to prove beyond a reasonable doubt that Special Agent Astarita did in fact fire shots.  But they have no such proof.  Amazingly, there are no witnesses claiming to have seen Special Agent Astarita discharge his firearm.  There is no video recording showing Special Agent Astarita discharging his firearm.  And there is no ballistics evidence that Special Agent Astarita discharged his firearm.  Rather, the government's case rests entirely on a computer animation manufactured by a daisy chain of so-called experts nearly two years after the underlying shooting incident.  This animation purports to illustrate that Special Agent Astarita was the most likely person to have fired one or two shots that missed the decedent.

The defense believes that the government's computer animation depends on a number of false premises and is utterly unreliable, having never been subjected to any sort of scientific testing.  In short, it is junk science.  We are presently assembling a team of experts who will prove just that at a hearing set for May.  Indeed, we hope to convince the government before May that this case should be dropped because the predicate to the alleged lie is based on junk science.  Today's motion, however, addresses another problem with the case: the government has taken *one alleged lie* by Special Agent Astarita—his heartfelt denial that he discharged his firearm during this incident—and turned it into *five criminal counts*.  The Court should not permit the government to inflate the number of charges and prejudice the jury against Special Agent Astarita with an indictment for five separate crimes all based on the same purported lie.

Special Agent Astarita moves to dismiss Counts I, II, III, and V of the Indictment because they are multiplicitous of Count IV.  In addition to the fact that they are multiplicitous, Counts II and V should also be dismissed because they fail to state an offense for the independent reasons set forth below.

PAGE 2 – MOTION TO DISMISS

## I.     FACTUAL BACKGROUND

### A.    The January 26, 2016 Roadblock and the Shots in Question

Special Agent Astarita is a member of the FBI's Hostage Rescue Team.  Indictment ¶ 1. On January 26, 2016, he was assigned to a joint FBI/Oregon State Police roadblock in Harney County, Oregon that was established to apprehend armed occupiers of the Malheur National Wildlife Refuge, including militia leader Robert LaVoy Finicum.  *Id*. ¶ 3.  In an effort to evade this roadblock after an Oregon State Police officer opened fire on his truck, Mr. Finicum plowed his truck into a snow bank, almost running over an FBI agent in the process.  *See* Ex. 1 (Transcript of 3/8/16 Press Conference) at 9-10, 23.  After Mr. Finicum exited his truck, he was shot and killed by three additional shots fired by two Oregon State Police officers. Indictment ¶ 4.  Oregon authorities immediately launched a deadly force investigation, and on March 8, 2016, the district attorneys for Harney and Malheur counties concluded that six shots admittedly taken by the Oregon State Police officers were appropriate.  *See* Ex. 1 (Transcript of 3/8/16 Press Conference) at 6, 11-17, 21-22.  This case relates not to those shots but to two additional shots which were not immediately attributed to any Oregon State Police officer or FBI agent who was present at the scene.  *Id*. at 11, 17-18, 23.  Evidence of these two unattributed shots was first discovered by Oregon authorities in connection with their deadly force investigation.  *Id*.  The matter was subsequently referred to the U.S. Attorney's Office for the District of Oregon, and the local investigation was expanded to include federal investigators.  *Id*. at 19-20, 23-26.

### B.    The Evolution of the Joint Investigation

Before federal investigators became involved in this case, four different Oregon law enforcement agencies conducted a deadly force investigation of the two Oregon State Police officers who killed Mr. Finicum.  *See* Ex. 1 (Transcript of 3/8/16 Press Conference) at 4.  The

PAGE 3 – MOTION TO DISMISS

Deschutes County Sheriff's Office was tasked as the lead investigative agency and received substantial assistance from the Oregon State Police, the Oregon State Police Forensic Laboratory, the Bend Police Department, and the Redmond Police Department (collectively, the "Tri-County Major Incident Team"). *Id*. After examining bullet damage to the roof of Mr. Finicum's truck and reviewing video footage of the incident, the Tri-County Major Incident Team questioned whether two additional shots were fired beyond the six shots already attributed to the two Oregon State Police officers. *Id*. at 5-6, 17-18.[1] As soon as the Major Incident Team contacted the U.S. Attorney's Office for the District of Oregon (USAO) about these two additional shots in late February 2016, the USAO contacted the FBI which in turn alerted the U.S. Department of Justice Office of Inspector General (OIG). *Id*. at 19. On February 20, 2016, the FBI sent a Shooting Incident Response Team to Oregon to investigate whether the shots in question could be attributed to any of the five FBI agents present on the scene. *Id*. This investigation was inconclusive. *Id*. at 23. Personnel from the USAO and OIG subsequently joined the investigation, which continued for over a year and culminated in the indictment of Special Agent Astarita on June 20, 2017.

### C. Investigators Asked Special Agent Astarita the Same Question Five Times

Special Agent Astarita was one of five FBI agents present at the scene of the shooting on January 26, 2016. While these agents were still on the scene, their FBI supervisors asked whether anyone had discharged his weapon. *See* Ex. 2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Because none of the FBI agents stated

---

[1] According to Oregon investigators, three of the six shots attributed to the Oregon State Police officers struck and killed Mr. Finicum. *See* Ex. 1 (Transcript of 3/8/16 Press Conference) at 5-6. Investigators also believe that one of these officers fired three shots into Mr. Finicum's truck as it approached the roadblock. *Id*. at 9-10.

PAGE 4 – MOTION TO DISMISS

that they shot, there was no need to seize their weapons or deploy an FBI Inspection Team. *Id*.

According to the Indictment, Special Agent Astarita was asked whether he discharged his weapon by two different FBI supervisors on January 26, 2016. Count I of the Indictment alleges that Special Agent Astarita "falsely stated that he had not fired his weapon" when he was asked by Supervisory Special Agent B.M. Count II likewise alleges that Special Agent Astarita "falsely stated that he had not fired his weapon" when Supervisory Special Agent I.M. asked him the same question. According to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ grand jury testimony, however, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Later on the night of January 26, 2016, the five FBI agents were removed from the scene to be interviewed by Oregon State Police detectives in connection with the local deadly force investigation. *See* Ex. 1 (Transcript of 3/8/16 Press Conference) at 18. Once again, none of the agents stated that they had discharged their weapons. *Id*. Special Agent Astarita's alleged "fail[ure] to disclose that he had fired" during this interview is the government's basis for Count IV. Oregon State Police detectives interviewed Special Agent Astarita for a second time on February 6, 2016. Unlike the January 26 interview, this was a group interview that also included two other FBI agents who had been present at the shooting scene. *See* Ex. 3 (OSP Supp. Incident Report 27) (WJA 9739) at 1. All three agents were jointly represented by counsel, and the Oregon State Police detectives were informed before the interview that they would not answer any questions that they had already been asked. *Id*. Notably, Special Agent Astarita "did not speak" during this interview. *See* Ex. 4 (OIG Interview of OSP Investigating Officer K) (WJA 2722) at 1. As with Count IV and the January 26 interview, the government's basis for Count V

PAGE 5 – MOTION TO DISMISS

is Special Agent Astarita's "fail[ure] to disclose that he had fired" in the February 6 interview.

Sometime between his January 26 and February 6 interviews by Oregon State Police detectives, Special Agent Astarita was allegedly asked by a third FBI Supervisory Special Agent whether he had discharged his weapon. The government contends that Special Agent Astarita "falsely stated that he had not fired his weapon" when he was asked by Supervisory Special Agent T.S. (which was the fourth time in the course of the investigation that he was asked this same question). As with Counts I and II, this denial is the government's basis for the false statement charge in Count III.

## II.    LEGAL ANALYSIS

The government has charged Special Agent Astarita with three counts of making false statements in violation of 18 U.S.C. § 1001 and two counts of obstruction of justice in violation of 18 U.S.C. § 1512(b)(3). The false statement charges (Counts I, II, and II) are all based on the theory that Special Agent Astarita discharged his weapon during the January 26, 2016 incident but "falsely stated that he had not fired his weapon" when he was asked the same exact question by three different FBI supervisors. It is noteworthy that, other than the date of the conversation and the name of the FBI supervisor, the government has used identical charging language in Counts I, II, and III. The obstruction charges (Counts IV and V) are both based on the theory that Special Agent Astarita "engage[d] in misleading conduct" in two different interviews with Oregon State Police detectives by "failing to disclose" that he had discharged his weapon. Again, it is noteworthy that, other than the date of the interview, the government has used identical charging language in Counts IV and V.

For the reasons explained below, the Court should dismiss counts I, II, III, and V pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) because they are multiplicitous of Count IV. The Court should also dismiss Counts II and V pursuant to Rule 12(b)(3)(B)(v)

PAGE 6 – MOTION TO DISMISS

because they both fail to state an offense (independent of the fact that they are multiplicitous).

### A. The Court Should Not Permit the Government to Charge Special Agent Astarita With Five Separate Crimes for Telling One Alleged Lie

The five-count indictment against Special Agent Astarita is a classic example of multiplicity, and the Court should dismiss all but Count IV pursuant to the three-step analysis outlined below.  If the government is permitted to charge Special Agent Astarita with five separate crimes for a single alleged lie, it will "prejudice the jury against [him] by creating the impression of more criminal activity on his part than in fact may have been present." *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986); *see also United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983) (same); *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (same).  As the Ninth Circuit has recognized, the multiplicity rule also protects criminal defendants against overzealous investigators seeking to run up the number of counts against a defendant "merely by repeating the same question." *Gebhard v. United States*, 422 F.2d 281, 290 (9th Cir. 1970).  Legal scholars have also called for checks on this kind of abuse of investigative power.  *See* Lisa Kern Griffin, *Criminal Lying, Prosecutorial Power, and Social Meaning*, 97 Calif. L. Rev. 1515, 1533-36 (2009).

At bottom, the government should only be permitted to charge Special Agent Astarita with one crime for one alleged lie.  *See Gebhard*, 422 F.2d at 290 ("[A] single punishment for a single lie should suffice.").

#### 1. Step One: Counts II and III Are Multiplicitous of Count I

As a matter of law, the government cannot charge the same false statement as multiple crimes.  *See United States v. Olsowy*, 836 F.2d 439, 443 (9th Cir. 1987).  In cases of multiple alleged false statements, the Ninth Circuit applies a two-prong test for multiplicity: (1) "whether [the] declarant was asked the same question and gave the same answer," and (2) "whether [the]

PAGE 7 – MOTION TO DISMISS

later false statements further impaired the operations of the government." *United States v. Salas-Camacho*, 859 F.2d 788, 791 (9th Cir. 1988). Under the first prong, the questions and answers need not be exactly the same so long as the exchanges are functionally equivalent. *See United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005). Under the second prong, the Ninth Circuit has held that simply repeating the same lie does not further impair the operations of the government. *See Olsowy*, 836 F.2d at 443 ("Once [the defendant] misled the [Secret Service] agent, repeating the lie add[ed] little or nothing to the harm caused to the Secret Service's inquiry."). The Eighth Circuit has likewise applied the "unitary harm rule" to reason that there can be no further impairment to the government by a subsequent false statement where "the harm was done from the outset." *See United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995).

Here, the alleged false statements underlying Counts II and III are multiplicitous of the alleged false statement underlying Count I because: (1) the substance of all three exchanges (Special Agent Astarita's denial that he discharged his weapon) is functionally equivalent; and (2) the government cannot show that its investigation was further impaired by the later denials. Other than the date of the conversation and the name of the FBI supervisor, the government used identical charging language in Courts I, II, and III:

> [Defendant] knowingly and willfully made a false statement to [an FBI agent], knowing that the statement was false and material to [the] FBI's decision not to call the Shooting Incident Response Team to investigate the propriety of an agent-involved shooting. Specifically, defendant . . . falsely stated he had not fired his weapon during the attempted arrest of Robert LaVoy Finicum, when he knew then and there that he had fired his weapon.

*See* Indictment at 2-3. Far from alleging that Special Agent Astarita's later denials caused any further impairment, the Indictment instead explicitly states that the harm from all three denials (*i.e.*, the "FBI's decision not to call the Shooting Incident Response Team to investigate the propriety of an agent-involved shooting") was done from the outset with Special Agent

PAGE 8 – MOTION TO DISMISS

Astarita's first allegedly false denial to Supervisory Special Agent B.M.

### 2. Step Two: Count V is Multiplicitous of Count IV

The multiplicity problem that infects the false statement counts against Special Agent Astarita (Counts I, II, and III) also infects the obstruction of justice counts against him (Counts IV and V). Like the false statement counts, the obstruction counts are based on identical charging language that explicitly states that the harm to the government was the same for both counts. In short, Count V is multiplicitous of Count IV because: (1) both counts are based on Special Agent Astarita's alleged "failure to disclose" to Oregon State Police detectives that he discharged his weapon; and (2) the government cannot show that the second alleged "failure to disclose" further impaired its investigation.

Counts IV and V are based on two different interviews of Special Agent Astarita conducted by Oregon State Police detectives. The first interview took place on the night of the shooting incident (January 26, 2016) and the second interview took place 11 days later, on February 6, 2016. According to the Indictment, Special Agent Astarita "engage[d] in misleading conduct" in both interviews by "failing to disclose that he had fired." Under the multiplicity rule, however, the government cannot proceed on both counts without alleging that the second "failure to disclose" further impaired the government's investigation. The identical charging language of Counts IV and V explicitly states there was no further impairment:

> [Defendant] did knowingly engage in misleading conduct toward . . . officers of the Oregon State Police, by failing to disclose that he had fired two rounds during the attempted arrest of Robert LaVoy Finicum. In failing to make that disclosure, defendant acted with the intent to hinder, delay and prevent the communication of information from the Oregon State Police to the [FBI].

*See* Indictment at 4-5. In addition to the identical charging language, the lack of further impairment to the government is further underscored by the fact that Special Agent Astarita *did not speak at all during this interview*, let alone make any false statements.

PAGE 9 – MOTION TO DISMISS

*See* Ex. 4 (OIG Interview of OSP Investigating Officer K) (WJA 2722) at 1.

### 3. Step Three: Count I is Multiplicitous of Count IV

The final step in the multiplicity analysis requires the Court to compare the elements of Count I (the only viable false statement count) to Count IV (the only viable obstruction of justice count) in a *Blockburger* analysis. Based on this comparison, the Court should dismiss Count I as multiplicitous of Count IV because: (1) the elements of the two alleged offenses are completely overlapping; (2) the counts are based on functionally equivalent exchanges; and (3) the government cannot allege that there was any separate impairment caused by the two exchanges.

When applying the multiplicity test to overlapping offenses, courts conduct a *Blockburger* analysis to determine "whether each count requires proof of an additional fact which the other does not." *United States v. Garlick*, 240 F.3d 789, 794 (9th Cir. 2001) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Here, a straightforward *Blockburger* analysis establishes that Count I is a lesser-included offense of Count IV:

- The elements of Count I (alleged false statement under 18 U.S.C. § 1001(a)) are: "(1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004).

- The elements of Count IV (alleged obstruction of justice through misleading conduct under 18 U.S.C. § 1512(b)(3)) are: (1) defendant "knowingly and willfully engaged in misleading conduct toward another person"; (2) defendant acted "with the intent to hinder, delay or prevent the communication of information to a federal law enforcement officer or federal judge"; and (3) the communication would have been "about the commission or possible commission of a federal crime." *United State v. Ronga*, No. 15-15542, 2017 WL 1046077, at *3 (11th Cir. Mar. 20, 2017).

- Elements 1, 2, and 4 of Count I would be proven by element 1 of Count IV because the definition of "misleading conduct" under 18 U.S.C. § 1515(3) mirrors the definition of making a false statement under 18 U.S.C. § 1001(a).

- Element 3 of Count I would be proven by element 2 of Count IV because a material false statement under § 1001 has "a natural tendency to influence . . . the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995).

- Element 5 of Count I would be proven by element 3 of Count IV because "agency

PAGE 10 – MOTION TO DISMISS

jurisdiction" under § 1001 extends to statements made to state officials investigating a potential federal crime. *United States v. King*, 660 F.3d 1071, 1081-82 (9th Cir. 2011).

In addition to having completely overlapping elements, Counts I and IV are based on functionally equivalent exchanges *that occurred just hours apart on the same day*. The exchange underlying Count I occurred between Special Agent Astarita and Supervisory Special Agent B.M. on the scene of the January 26, 2016 shooting incident. The exchange underlying Count IV occurred later the same night between Special Agent Astarita and two Oregon State Police detectives. The sum and substance of both exchanges is that Special Agent Astarita denied firing his weapon. Given the parallel nature and close temporal relationship between these exchanges, the government cannot allege that they caused any separate impairment.

Based on the complete overlap between the elements of Counts I and IV, the equivalence of the underlying exchanges, and the lack of any distinct impairment to the government, the Court should dismiss the lesser-included offense of Count I as multiplicitous of Count IV.

### B.  Counts II and V Should Also Be Dismissed for Failure to State An Offense

In addition to the fact that they are multiplicitous of Count IV, Counts II and V should also be dismissed for the separate and independent reason that they fail to state an offense under Rule 12(b)(3)(B)(v).

#### 1.  Count II Fails to State an Offense

Count II fails to state an offense for making a false statement under 18 U.S.C. § 1001(a) for two independent reasons. First, Special Agent Astarita's alleged statement to Supervisory Special Agent I.M. cannot as a matter of law be considered "true" or "false" because it was not a factual assertion. Second, the alleged statement cannot as a matter of law be considered material because it was unresponsive to the question posed.

According to the grand jury testimony of ████████████████████████

PAGE 11 – MOTION TO DISMISS

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

████████████████████████████████████ as a matter of law, a command such as ████████████ is a mere verbal act as opposed to an assertion of fact. *See Chrysler v. City of W. Covina*, 165 F.3d 915, 1998 WL 845795, at *1 (9th Cir. 1998) (unpublished) (a command is not hearsay because it is a "verbal act" that it does not go to the truth); *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017) ("[A] command is not hearsay because it is not an assertion of fact."). When a statement does not assert any fact, it cannot be characterized as either "true" or "false." *See Williams v. United States*, 458 U.S. 279, 284 (1982). Accordingly, Special Agent Astarita's alleged retort cannot as a matter of law constitute a false statement.

In addition to the fact that it lacks any truth value, Special Agent Astarita's alleged retort was unresponsive to the question posed and is therefore immaterial as a matter of law. Because no reasonable juror could find this exchange material to the government's investigation, the Court should dismiss Count II for failure to state an offense. *See United States v. Serv. Deli Inc.*, 151 F.3d 938, 941 (9th Cir. 1998). To be material, a false statement must have "a natural tendency to influence, or [be] capable of influencing . . . the decisionmaking body to which it was addressed." *Gaudin*, 515 U.S. at 509. To satisfy this element, the government must allege

that "the charged conduct" caused investigators "to cease [the] investigation, pursue different avenues of inquiry or reach a different outcome." *United States v. Bond*, 784 F.3d 582, 585 (9th Cir. 2015) (en banc) (Kozinski, J., concurring). Here, the government cannot allege that Special Agent Astarita's unresponsive retort ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ caused investigators to cease or alter the investigation *because exactly the opposite occurred*. As indicated in Counts III, IV, and V of the Indictment, Special Agent Astarita was asked the exact same question at least three more times after giving this alleged unresponsive retort.

### 2. Count V Fails to State an Offense

Count V is based on the February 6, 2016 group interview by Oregon State Police detectives *in which Special Agent Astarita did not speak*. This count fails to state an offense for obstruction of justice through misleading conduct under 18 U.S.C. § 1512(b)(3) because the government's allegation of a mere "failure to disclose" does not suffice where Special Agent Astarita merely remained silent.

Because *he made no statement at all*, the government cannot allege that Special Agent Astarita engaged in "misleading conduct" by "knowingly ma[king] a false *statement*" or "intentionally omit[ting] information from a *statement* and thereby caus[ing] a portion of such *statement* to be misleading" or "intentionally conceal[ing] a material fact, and thereby creat[ing] a false impression by such *statement*." 18 U.S.C. § 1515(3)(A)-(B). Nor may the government rely on § 1515(3)(E) because courts require proof of an affirmative act for concealment by "trick, scheme, or device," and a "passive failure" to disclose is not an affirmative act. *See United States v. White Eagle*, 721 F.3d 1108, 1117 (9th Cir. 2013); *United States v. Shannon*, 836 F.2d

PAGE 13 – MOTION TO DISMISS

1125, 1129-30 (8th Cir. 1988); *United States v. Mubayyid*, 658 F.3d 35, 70 (1st Cir. 2011).[2]

The reason courts require proof of an affirmative act to criminalize concealment by "trick, scheme, or device" is to protect the defendant's right against self-incrimination. *See United States v. London*, 550 F.2d 206, 212 (5th Cir. 1977) ("In construing a statute that will often come dangerously close to trenching on fifth amendment rights, one ought not punish concealments . . . that fall short of constituting affirmative acts. Otherwise . . . an exculpatory denial . . . might be punished [as] concealing material information."). It is essential that this protection be afforded to Special Agent Astarita under the unique circumstances of the February 6, 2016 interview. As noted above, this was a joint interview of three different FBI agents represented by counsel, and Oregon State Police detectives were told in advance that the agents would not answer questions that they had already been asked. *See* Ex. 3 (OSP Supp. Incident Report 27) (WJA 9739) at 1. In addition, Special Agent Astarita *did not speak* during this interview. *See* Ex. 4 (OIG Interview of OSP Investigating Officer K) (WJA 2722) at 1.

This Court should not permit the government to sidestep the affirmative act requirement by basing Count V on an interview in which the defendant exercised his right to remain silent.

### III.   CONCLUSION

Special Agent Astarita respectfully asks this Court to dismiss counts I, II, III, and V of the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) because they are multiplicitous of Count IV. The Court should also dismiss Counts II and V pursuant to Rule 12(b)(3)(B)(v) for the independent reasons set forth above.

---

[2] While these cases address the "trick, scheme, or device" language of 18 U.S.C. § 1001(a), their logic applies with equal force to obstruction of justice by misleading conduct under 18 U.S.C. § 1512(b)(3) because 18 U.S.C. § 1515(3)(E) contains nearly identical language.

PAGE 14 – MOTION TO DISMISS

DATED this 12th day of January 2018.

         Respectfully submitted,

         s/  *David H. Angeli*
         **ANGELI LAW GROUP LLC**
         DAVID H. ANGELI, OSB No. 020244
         TYLER P. FRANCIS, OSB No. 162519

         **WILLIAMS & CONNOLLY LLP**
         ROBERT M. CARY, DC Bar No. 431815
          (*pro hac vice*)
         MEGHAN A. FERGUSON, DC Bar No. 1002203
          (*pro hac vice*)

         *Attorneys for Defendant*